IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 16, 2003 Session

## EDDIE DEAN HALL  v.  STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Cocke County**
**No. 24,782-I     Ben W. Hooper II, Judge**

---

**No. E2002-01986-CCA-R3-PC**
**March 10, 2004**

---

Petitioner, Eddie Dean Hall, pled guilty to two counts of first degree murder and received concurrent sentences of life without parole.  No direct appeal was taken.  Petitioner timely filed a petition for post-conviction relief, alleging that counsel was ineffective and that his guilty plea was not knowingly and voluntarily entered.  Petitioner appeals from the trial court's denial of post-conviction relief.  After a careful review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOE G. RILEY and NORMA MCGEE OGLE, JJ., joined.

Robert L. Jolley, Jr., Knoxville, Tennessee (on appeal), and Keith A. Haas, Newport, Tennessee (at trial), for the appellant, Eddie Dean Hall.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Al Schmutzer, Jr., District Attorney General; James Bruce Dunn, Assistant District Attorney, for the appellee, the State of Tennessee.

## OPINION

At a single hearing on December 29, 1996, Petitioner entered guilty pleas to two counts of first degree murder, one arising out of Greene County and the other arising out of Cocke County. A claim of ineffective assistance of counsel in the Greene County case has been previously determined in *Eddie Dean Hall v. State*, No. 03C01-9806-CR-00218, 1999 Tenn. Crim. App. LEXIS 834, (Tenn. Crim. App. at Knoxville, August 16, 1999), *perm. to app. denied* (Tenn. 1999). Therefore, we will address Petitioner's claim only as it relates to trial counsel's performance in the Cocke County case.

**Post-Conviction Hearing**

On November 20, 1997, Petitioner timely filed a *pro se* petition for post-conviction relief. Petitioner was appointed counsel and an amended petition was subsequently filed. Petitioner filed a *pro se* "Motion to Remove Counsel," asserting that attorney David Hill represented Petitioner in a civil matter, in which Petitioner was a defendant and a default judgment was entered against him. The trial court granted Petitioner's motion and appointed new counsel, granting Petitioner thirty days within which to file an amended petition for post-conviction relief. On July 16, 2001, Petitioner filed another "Motion to Remove Counsel," asserting that attorney Jason Randolph "had no knowledge of the petitioner's case and no materials that he would have needed to successfully prosecute a post conviction petition." Additionally, Petitioner asserted that Mr. Randolph had never represented any petitioner in a post-conviction proceeding. The trial court took the motion under advisement and ordered that Mr. Randolph continue to represent Petitioner pending further orders of the trial court. On September 11, 2001, Petitioner filed an amended petition for post-conviction relief, alleging ineffective assistance of counsel.

An evidentiary hearing was conducted on September 18, 2001. Mr. Randolph represented Petitioner at the hearing. Petitioner testified at the hearing that he pled guilty to two charges of first degree murder in December, 1996. Petitioner testified that his co-defendant, Alvin Dean Shavers, had "set [him] up." Petitioner's counsel in the Cocke County case was Susanna Laws Thomas. In this opinion, we will refer to Ms. Thomas by name or as "trial counsel" or "counsel." Petitioner testified that he met with trial counsel on three occasions. Petitioner asked trial counsel to interview his sisters, Carolyn Hall, Bobbie Jo Hall, and Melinda Hall; Carolyn Hall's boyfriend, Wade Shults; the co-defendant, Alvin Dean Shavers; Petitioner's girlfriend, Joanne Bowlin, and her mother, Anne Gold; Petitioner's brother, Troy Hall; and Walter Allen. Most of those witnesses lived in Cocke County.

Petitioner testified that his lawyer in the Greene County case told him that Ms. Thomas had experienced a "tragedy" and was "going through a very stressful time." Petitioner testified that he would not have pled guilty if trial counsel, Ms. Thomas, had not advised him that District Attorney General Al Schmutzer "hated" Petitioner and would "see that [Petitioner] got the death penalty if [he] didn't take the plea agreement, guilty or not guilty." Petitioner testified that if counsel had discovered any exculpatory evidence, he would have gone to trial. Petitioner testified that during his meetings with counsel, she did not inform him about potential witnesses or other proof. Petitioner testified that he did not kill the victim.

The transcript from the guilty plea hearing shows that the trial court questioned Petitioner thoroughly prior to the entry of his guilty pleas. The trial court asked Petitioner, "And has anyone promised you or frightened you or coerced you or forced you into doing this or is this something that you have thought about and you understand what you're doing?" Petitioner responded, "Yes, sir." At the post-conviction hearing, Petitioner's counsel pointed out that the trial court's question was two-pronged and asked Petitioner which prong he was answering affirmatively. Petitioner testified that he had been forced to enter his guilty plea.

Alvin Dean Shaver testified that on November 25 or 26, 1995, he and Petitioner went to Newport, Tennessee, to get some money that Harry Lillard owed Mr. Shaver. Petitioner and his brother Troy stayed inside the house while Mr. Shaver and Mr. Lillard walked outside to Mr. Lillard's car. Mr. Shaver asked for his money, and Mr. Lillard refused to give him any money. They argued, and Mr. Lillard "tried to pull a pistol" on Mr. Shaver. Mr. Shaver had a .25 automatic in his hip pocket. He pulled it out with his finger on the trigger, and "the gun went off and accidentally shot [Mr. Lillard] through the neck." Petitioner heard the shot and came outside. Petitioner and Mr. Shaver put Mr. Lillard in the car to drive him to the hospital. Mr. Shaver sat in the backseat with Mr. Lillard. Mr. Shaver testified that he had "been drinking that day." On the way to the hospital, Mr. Shaver "panicked and [] shot [Mr. Lillard] with his own gun." Petitioner "almost ran off the road and wrecked us." Mr. Shaver then "cocked the hammer on the gun, put it behind [Petitioner's] head and told him to turn the car around." They took Mr. Lillard "out in the country [and] let him out." They drove to Mr. Shaver's apartment, and he "cleaned everything up" while Petitioner "laid there, got him a couple hours sleep." Petitioner left the next morning.

Mr. Shaver was convicted for the murder of Harry Lillard, and he did not appeal his conviction. Mr. Shaver testified that on "numerous occasions," he asked his trial counsel to contact Petitioner's trial counsel and arrange a meeting so that Mr. Shaver "could clear this up and it was never done." Mr. Shaver testified that he spoke to Detective Grooms and Detective Shults on December 5, 1995. He told the detectives that he last saw Petitioner one or two days after his wedding on November 17, 1995. Petitioner and a girl named E.J. came to his house. They got into a fight, and Petitioner left. Mr. Shaver stated to the detectives that he had never met Harry Lillard. He also stated that he had never seen Petitioner with a gun. Mr. Shaver testified that he was not questioned about the incident after his arrest. Mr. Shaver had written several letters to his wife, DeeDee Shaver, while he was incarcerated, but before he was convicted. Ms. Shaver was also incarcerated at the time of the letters. In a letter to Ms. Shaver, Mr. Shaver denied any involvement in the homicide. In one letter to DeeDee Shaver, Mr. Shaver wrote,

> Although neither one of us had anything to do with this, if it means me giving up my life and pleading to something I didn't do to give you your life, then that's the way it will be. It can't be any other way. I just can't understand why they [the detectives] can't see and understand that we had nothing to do about this.

Mr. Shaver testified that at the time he wrote the letters, he "had a good indication" that his wife was collaborating with the government.

Susanna Laws Thomas represented Petitioner in the Cocke County case. Ms. Thomas testified that she was an assistant public defender, and she was qualified to represent defendants in death penalty cases. Ms. Thomas met with Petitioner on April 19, 1996, to discuss the State's response to Petitioner's request for discovery. Ms. Thomas prepared a memo for Public Defender Ed Miller on October 30, 1996, stating that she and assistant public defender Dennis Campbell would be handling Petitioner's case, and asking for suggestions in preparing the case. Ms. Thomas met with Petitioner four times at Northeastern Correctional Facility. Ms. Thomas also met with

Petitioner at Cocke County Jail following his arrest in this case. Mike Walcher, from the Greene County Public Defender's Office, accompanied Ms. Thomas on her second visit with Petitioner. On November 20, 1996, Ms. Thomas discussed the plea agreement with Petitioner.

Ms. Thomas testified that Petitioner provided her with a list of potential witnesses, and all of those witnesses were listed as potential State witnesses on the State's discovery response. She attempted to talk to all of them, and she actually talked to most of them. Ms. Thomas spoke to Joanne Bowlin by telephone. Ms. Bowlin would have testified that Petitioner stayed with her during the Thanksgiving holiday, during the period of time in which the homicide occurred. Witnesses who were allegedly present at the time of the incident were Troy Hall, Wade Shults, Walter Allen, Petitioner's sisters, Carolyn and Melinda Hall, and Petitioner's mother. Petitioner's brother, Troy Hall, called Ms. Thomas and visited her office on several occasions. Ms. Thomas spoke to Petitioner's sisters, and she asked to speak with Petitioner's mother, but his sister told her that "she was asleep and didn't know anything about what happened." Ms. Thomas did not confirm that with Petitioner's mother. Tony Valez was a neighbor of the victim. Ms. Thomas' notes indicated that Mr. Valez heard shots and saw a car. He could identify the car, but not the occupants in the car. James Miller was also a neighbor, and he heard shots, but he did not see anything. Ms. Thomas also spoke to Teddy Campbell, who had been offered for sale an unusual gun. Ms. Thomas testified that the weapon used in this case was also unusual in that "it broke down in the middle to load."

Ms. Thomas testified that at the time of the plea agreement, Petitioner was a suspect in a first degree murder in Greene County, and she anticipated an indictment on that charge because there was "considerable physical evidence in that case." Ms. Thomas testified that the State had "a considerable amount of evidence" against Petitioner in the Greene County case, and the two cases "overlapped" each other. The case in Greene County involved a home invasion, robbery, and murder. The victim was a gun collector, and guns were taken from his home. The State's theory of the case was that Petitioner and Mr. Shaver took those guns to Harry Lillard to have the serial numbers removed so that they could be sold. The State's theory of the motive was that Troy Hall learned that Harry Lillard was working as an informant, and Petitioner and Mr. Shaver killed Mr. Lillard and disposed of the guns to cover up the evidence against them in the Greene County case.

Ms. Thomas spoke to Mr. Shaver's attorney, who advised her that "he was trying to work a deal to testify against [Petitioner]." Ms. Thomas understood that DeeDee Shaver had given an incriminating statement against Petitioner and would testify at trial. Ms. Thomas believed that the most damaging evidence against Petitioner was Ms. Shaver's statement that "she saw him shoot Harry Lillard in the back of the head." Ms. Thomas believed that "the possibility of resolving both cases without a death sentence was quite small," and she advised Petitioner as much.

Ms. Thomas testified that a videotape was made of Ms. Shaver attempting to elicit an incriminating statement from Mr. Shaver, but she did not show the videotape to Petitioner. During rebuttal proof, Petitioner testified that Ms. Thomas informed him about the videotape, but she never provided him with the videotape. Petitioner testified that on the date of the offense, he ran out of

the house when he heard a gunshot.  He saw Mr. Shaver leaning over Mr. Lillard.  Mr. Shaver told him that he accidentally shot Mr. Lillard because he tried to pull a gun on him.  Petitioner testified that Mr. Lillard had been shot in the neck, and he spit out a .25 caliber bullet onto the ground.  Petitioner put Mr. Lillard in the car and drove to the hospital.  Petitioner testified that on the way to the hospital, Mr. Shaver told him to pull over.  Mr. Shaver said, "I'm not going back to prison over this man," and Petitioner drove Mr. Shaver back to his car.  Petitioner testified that Ms. Shaver could not have seen "somebody shoot somebody."

Ms. Thomas testified that at the time of the plea hearing, Petitioner's case was definitely not ready to go to trial," and that she had "done nothing on mitigation work in this case."  Ms. Thomas investigated possible defenses, including that the homicide was an accidental shooting, in addition to a possible alibi defense.  Ms. Thomas testified that Petitioner had told her a version of events similar to what Mr. Shaver testified to.  She explained to Petitioner that a jury could find him criminally responsible for the acts of Mr. Shaver.  Ms. Thomas testified that she gave Petitioner the option to go to trial, and the decision to plead guilty was Petitioner's, and "it was based on the best advice that we could give him based on what we knew at that time."  Ms. Thomas testified that the personal incident that Petitioner referred to in his testimony occurred in June, 1997, after Petitioner pled guilty in this case.

At the conclusion of the hearing, the trial court orally denied post-conviction relief, finding that Petitioner's co-defendant, Alvin Dean Shaver, was not a credible witness.  The court also found that counsel met with Petitioner on at least four occasions, that counsel interviewed all but "maybe two witnesses," and that counsel's failure to interview those witnesses did not render her incompetent.  The trial court found that "[t]he record indicates that [counsel] did practically everything that any competent defense attorney would have done up to the point of resolving this case on these pleas of guilty."  The trial court found that counsel properly investigated Petitioner's case and did not "compel" Petitioner to plead guilty.

Following the September 18, 2001, hearing, the trial court granted Petitioner's earlier motion to remove counsel and appointed Keith Haas to represent Petitioner in his appeal from the denial of post-conviction relief.  A notice of appeal was filed on August 15, 2002, almost a year later.  On September 3, 2002, Petitioner filed a *pro se* Motion to Render Decision pursuant to Tennessee Supreme Court Rule 11, § III (c), alleging that no written order denying post-conviction relief was entered by the trial court.  The trial court subsequently entered a written order dismissing Petitioner's petition for post-conviction relief and the amended petition on September 12, 2002.  In the written order, the trial court found, "The witnesses called on the Petitioner's behalf and the Petitioner himself . . . [had] little or no credibility."  The trial court also found that counsel during the plea phase "did a thorough job in guarding the interests of her client and performed her duties to her client in a manner deemed diligent, professional and appropriate."  The trial court found that Ms. Thomas was "very competent and capable and in fact is one of the most experienced criminal lawyers in this circuit."  The court further found:

Petitioner is not the type of person who would sit back while an incompetent lawyer entered pleas of guilty on his behalf to two (2) first degree murders. It is clear from the transcript of the plea proceeding that Mr. Hall entered into his guilty pleas freely and voluntarily and was aware of the consequences thereof and did so because he was in fact guilty.

Petitioner subsequently filed a "Motion to Reconsider the Denial of Post-Conviction Relief and Motion for Judicial Notice and Petition for Writ of Error Coram Nobis." Petitioner argued that Mr. Haas could not adequately represent him on appeal because he did not represent him at the post-conviction hearing. In an order dated September 18, 2002, the trial court purportedly set aside its previous order denying post-conviction relief and granted a new post-conviction hearing. The court found that attorney Jason Randolph was competent to adequately represent Petitioner in the post-conviction proceedings, but "[t]he fault found by the Court with petitioner's attorney is his failure to prepare and file the order denying the petition." The trial court found that no written order denying post-conviction relief had been timely entered following the September 18, 2001, hearing, and therefore, an appeal could not be perfected. The court found that it was not "patently unfair" for attorney Keith Haas to perfect an appeal although he did not represent Petitioner in the post-conviction proceedings. Nevertheless, the trial court decided to set aside the previous order denying relief and grant a new hearing. Another evidentiary hearing was conducted on February 25, 2003.

As stated above, the notice of appeal was filed on August 15, 2002. Tennessee Rule of Appellate Procedure 4(d) provides: "A prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof." Therefore, the notice of appeal must be treated as filed on September 12, 2002, the date on which the written order dismissing the post-conviction petition was entered. The jurisdiction of the Court of Criminal Appeals attaches with the filing of the notice of appeal, and the trial court therefore loses jurisdiction and has no power to modify or amend the judgment after the filing of the notice of appeal. *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996). The filing of the notice of appeal divested the trial court of jurisdiction to set aside its previous order and grant a new post-conviction hearing. The September 18, 2002, order purporting to do so is void. We will therefore limit our review to the proof presented at the September 18, 2001, hearing.

**Standard of Review**

The petitioner must prove his allegations in a post-conviction proceeding by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). The trial judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, this Court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the trial judge. *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). Questions concerning the credibility of witnesses and the weight and value to be given to their testimony are resolved by the trial court, not this Court. *Burns*, 6 S.W.3d at 461. The burden of establishing that the evidence preponderates otherwise is on

petitioner. *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). The trial court's conclusions of law, however, are reviewed under a purely *de novo* standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

**Ineffective Assistance of Counsel**

Petitioner argues that he did not voluntarily and knowingly enter his guilty plea because he was denied the effective assistance of counsel. Petitioner asserts that counsel did not interview witnesses and did not investigate evidence in support of mitigation prior to the entry of his guilty plea.

We review a claim of ineffective assistance of counsel under the standards of *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975), and *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996); *Butler v. State*, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. *Goad*, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

When a petitioner alleges ineffective assistance of counsel in the context of a guilty plea, the petitioner must establish that but for counsel's deficiency, he would have gone to trial instead of entering the plea of guilty. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

The trial court accredited the testimony of Ms. Thomas and found that Petitioner and the witnesses who testified on his behalf had "little or no credibility." The record indicates that Ms. Thomas interviewed potential witnesses and properly investigated Petitioner's case, including any available defenses. The record also indicates that Ms. Thomas apprised Petitioner of the status of his case, meeting with Petitioner on at least four occasions. Ms. Thomas testified that she advised Petitioner of the possible outcome of a trial, and Petitioner understood that he could be sentenced to death if convicted by a jury. Ms. Thomas informed Petitioner that the decision to go to trial or enter the negotiated plea agreement was his to make. The record indicates that Petitioner received the competent advice of counsel and that Petitioner knowingly and voluntarily entered his guilty plea. Furthermore, Petitioner has not established that but for counsel's alleged errors, he would have proceeded to trial. The evidence does not preponderate against the findings of the trial court. Petitioner is not entitled to relief in this appeal.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE